UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AUDWIN VILLARAN** <br><br> **Petitioner,** <br><br> v. <br><br> **TERRENCE MOORE, Administrator, East Jersey State Prison, and PETER C. HARVEY, Attorney General of New Jersey,** <br><br> **Respondents.** | 03-4105 (WJM) <br><br><br> **OPINION** <br><br> **HON. WILLIAM J. MARTINI** |

Audwin Villaran
East Jersey State Prison
301885
Lock Bag R
Rahway, NJ 07065

    (*Petitioner Pro Se*)

Carol Marie Henderson
Office of the New Jersey Attorney General
Division of Criminal Justice
Appellate Section
PO Box 086
Trenton, NJ 08625

    (*Attorney for Respondents*)


**MARTINI, U.S.D.J.:**

    Petitioner Audwin Villaran, a prisoner currently confined at the East Jersey State Prison, submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondents filed an answer, accompanied by relevant portions of the state record, arguing that the petition should be denied on the merits.  For the following reasons, the Court dismisses the petition and declines

to issue a certificate of appealability.

## BACKGROUND

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> On June 1, 1994, the day before her seventeenth birthday, Meika Zialcita was found dead. She had been stabbed multiple times. A jury found defendant Audwin Villaran guilty of knowing or purposeful murder contrary to N.J.S.A. 2C:11-3a(1), possession of a weapon (a knife) for an unlawful purpose contrary to N.J.S.A. 2C:39-4d, and unlawful possession of the knife contrary to N.J.S.A. 2C:39-5d. [The New Jersey Superior Court] sentenced defendant as a persistent offender to a life term with a thirty-five year period of parole ineligibility for the murder conviction and merged the weapons convictions with the murder conviction. ...
>
> Meika Zialcita resided in a two bedroom apartment in Jersey City with her boyfriend, Anthony Ortiz; his sister Raquel and her three children; defendant and his brother Jose. Defendant was Raquel's fiancé and the father of two of the three children....
>
> On June 1, 1994, Raquel Ortiz left for work at approximately 8:30 a.m. Defendant, the three children and the victim remained in the apartment. The victim was to watch the children, aged three, two and one, for the day. At approximately 1 p.m., defendant telephoned Raquel at work to inform her that her welfare check had not arrived. Defendant then visited Raquel at her job at approximately 4 p.m., ostensibly to get keys to the apartment. ...
>
> Raquel returned home at approximately 6 p.m. and found defendant sitting in front of the building holding a puppy. Raquel was let into the apartment by her three year old daughter, Christina. When she and defendant entered the apartment, Raquel found a knife on the kitchen floor. She picked it up and handed it to defendant who placed it in the sink. The knife was later removed from the sink and placed in the bedroom where the victim was found. Soon thereafter, Raquel discovered the victim's body lying half on and half off the bed in a "messy" bedroom. She telephoned the police who arrived at approximately 6:20 p.m. Defendant, who was on parole at the time, and his brother, who was the subject of an arrest warrant in

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

New York, left the apartment before the police arrived.

An autopsy was performed on the victim on June 2. An external examination of the body revealed twelve stab wounds to the neck, head and chest. ... Although the exact time of death could not be determined, the medical examiner opined the victim was killed between 8 a.m. and 8 p.m. on June 1.

A homicide investigator with the Hudson County Prosecutor's office responded to the building that evening and described the apartment as "dirty" and "disheveled," but with no indication of forcible entry or theft. Raquel Ortiz did not initially tell another investigator that defendant also lived in the apartment because he was doing so in violation of a restraining order that was filed to enable her to receive priority for public housing.

Various tenants testified they saw defendant and the victim together on June 1. At approximately 1 p.m. a tenant of the apartment building who was waiting outside for the mailman saw the victim and defendant in the window of the apartment. ...

Another tenant testified that she saw the victim sometime between 10 a.m. and noon waiting for a welfare check with the other tenants of the building. ... Sometime between 3:30 p.m. and 5 p.m. defendant knocked on her door asking to borrow a belt for his work pants and "didn't seem himself."

Another tenant who lived one floor above the apartment testified that at approximately 1:30 p.m. she heard a man and a woman arguing and what sounded like objects being turned over and someone being beaten. This tenant heard the female screaming for the male to stop and leave her alone and heard children crying. According to her, the woman referred to the man as "Ed" or "Eddie." Defendant was known as Edwin. She then heard a door slam and footsteps running down the stairs. The argument ended at approximately 4 p.m. This witness admitted to being addicted to cocaine, alcohol and marijuana at the time of the incident and at the time of trial.

Investigator Molina, assigned to the child abuse sex crimes unit of the Hudson County Prosecutor's Office, related a statement given by Christina to her on June 2. At the time, Christina was three years, eight months old. Investigator Molina stated that when asked what happened to Meika, Christina responded her mother told her Meika killed herself. Christina said she did not know the difference between the truth and a lie.

During the course of the forty-five minute interview, Christina told the investigator defendant was mad at Meika for smoking, hit her in the face and cut her on the neck causing Meika to vomit on a pillow. Christina saw this peeking through a curtain

2

> that divided the bedroom from the rest of the apartment. Defendant then walked out of the bedroom and told Christina that if she was good and did not go into the bedroom he would get her a puppy. After he left the apartment, Christina bolted the door. Christina also stated there was a bent knife on the kitchen floor without any blood on it and after defendant left the apartment she peeked through the curtain and saw Meika covered in blood. Christina opened the door for her mother when she came home from work and said her mother picked up the knife and put it in Meika's room. Defendant came home with her mother but left before the police and firemen arrived. Investigator Molina described Christina as being very nervous, upset and incontinent during the course of the interview.
>
> The jury also observed a videotape of the September 29, 1997 *in camera* hearing to determine the competency of Christina as a witness. Throughout her testimony, she stated that she could not remember what happened to the victim. Christina could only remember that a nightmare awoke her and she shut the apartment door. She also recalled that her mother came home from work that day and picked up a knife from the kitchen floor. She admitted that her mother told her that it was bad to talk about what happened to the victim.
>
> A stipulation concerning physical evidence in the case was read. The jury was advised that fingerprints recovered from the knife found in the kitchen could not be identified. Blood found on the knife tested positive for human blood but no other characteristics could be identified. Tests conducted on defendant's jacket or windbreaker proved positive for blood stains but it could not be determined whether the blood was of human origin.
>
> Defendant consented to an interview by Hudson County homicide investigators at midnight on June 2 and proceeded to give them three versions of his story. ... When neither Raquel Ortiz nor defendant's mother could corroborate defendant's story, defendant received and waived his Miranda rights at approximately 2 a.m. on June 2. ... Some time later, defendant asked investigators if they could make a sentencing deal with him in return for his cooperation. ... Shortly thereafter, defendant was charged with murder.

*State v. Villaran*, No. A-6376-97T3, slip op. at 1-8 (N.J. Super. Ct. App. Div. Oct. 20, 1999).

The Appellate Division affirmed Petitioner's conviction and the New Jersey Supreme Court denied his petition for certification. *Id.* at 9-17; *State v. Villaran*, 163 N.J. 76 (2000). Petitioner then filed a petition for post-conviction relief ("PCR"), which the Superior Court denied. *See* Transcript of Record, *State v. Villaran*, No. A-6518-00-T4 (N.J. Super. Ct. Oct. 25, 2001)

3

[*hereinafter* "PCR Hearing"]. The Appellate Division later affirmed this decision, *State v. Villaran*, No. A-2302-01T4, slip op. (N.J. Super. Ct. App. Div. Jan. 17, 2003), and the New Jersey Supreme Court denied certification.

This petition followed. Respondents answered, asserting that the Court should deny the petition on the merits. Petitioner filed a reply in support of his petition. This matter is now ripe for disposition.

## DISCUSSION

**I.     28 U.S.C. § 2254**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court

confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). *Id*. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. *Id*. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. *Matteo v. Superintendent*, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. *Chadwick v. Janecka*, 302 F.3d 107, 116 (3d Cir. 2002) (citing *Weeks v. Angelone*, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. *See Hameen v. State of Delaware*, 212 F.3d 226, 248 (3d Cir. 2000), *cert. denied*, 532 U.S. 924 (2001); *Purnell v. Hendricks*, 2000 WL 1523144, *6 n.4 (D.N.J. 2000); *see also Schoenberger v. Russell*, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein). The deference required by § 2254(d) applies without regard to whether the state court cites to

Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." *Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004) (citing *Early v. Packer*, 537 U.S. 3 (2002); *Woodford v. Visciotti*, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998); *Lewis v. Attorney General*, 878 F.2d 714, 721-22 (3d Cir. 1989); *United States v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969), *cert. denied*, 399 U.S. 912 (1970).

## II. Ineffective Assistance of Trial Counsel

Petitioner first argues that he received ineffective assistance of trial counsel. The right to counsel is the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970)). Counsel can deprive a defendant of this right by failing to render adequate legal assistance. *See id*. A claim that counsel's assistance was so defective as to require a reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. In this regard, the convicted defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.* Second, the defendant must show that "there is a reasonable probability that, absent the errors,

the factfidner would have had a reasonable doubt respecting guilt." *Id.* at 695.

Petitioner first argues that his trial counsel was ineffective because he failed to request a "taint hearing" regarding Christina Ortiz's statements.  However, the record clearly shows that the trial court examined whether Investigator Molina's questioning tainted Christina's statements.  (*See* Trial Tr. at 9T 39-48.)  Therefore, regardless of whether a trial court's failure to hold a taint hearing under these circumstances resulted in a constitutional violation, Petitioner's argument on this ground is moot.  Therefore, Petitioner is not entitled to relief on this claim.

Next, Petitioner argues that his trial counsel was ineffective because he failed to submit a brief on the admissibility of Christina Ortiz's statement.  Petitioner raised this argument at the PCR Hearing.  There, the Superior Court determined that trial counsel's failure to submit a brief was not prejudicial because he argued against the admissibility of Christina's statements at the *in camera* hearing.  (PCR Hearing at 19.)  Furthermore, Petitioner's appellate counsel raised, and fully briefed, the admissibility of Christina's statements on direct appeal.  (*Id.*)  Based on this, the Superior Court concluded that "the fact that trial counsel didn't file [a] formal brief on the issue was irrelevant in light of the issue [sic] of the appellate court." (*Id.*)  On appeal, the Appellate Division affirmed.

This Court agrees.  The record clearly reflects that Petitioner was not prejudiced by trial counsel's failure to file such a brief.  Furthermore, the state courts' rulings on this issue were not contrary to, or an unreasonable application of, Supreme Court precedent.  Therefore, Petitioner is not entitled to relief on this claim.

Next, Petitioner argues that his trial counsel was ineffective because he failed call Christina Ortiz as a witness.  Petitioner raised this issue at the PCR Hearing.  At the hearing, the

7

Superior Court noted that Christina testified, during the *in camera* competency hearing, that she could not remember any of the events of the day in question. (*Id.* at 16.) Furthermore, the Superior Court noted that Christina testified that she experienced nightmares on a regular basis. (*Id.* at 16-17.) Based on this testimony, the Superior Court concluded that trial counsel did not call Christina for two reasons. First, there was a great likelihood that Christina would indicate her inability to remember the event in question. (*Id.* at 17.) Second, she would be impeached by her prior inconsistent statements, namely her interview with Investigator Molina. (*Id.*) Therefore, the Superior Court held that trial counsel made a strategic decision not to call Christina to the stand. On appeal, the Appellate Division affirmed.

"Counsel's failure to call a witness 'is precisely the sort of strategic trial decision that *Strickland* protects from second-guessing.'" *Henderson v. DiGuigliemo*, 138 Fed. Appx. 463, 469 (3d Cir. 2005) (quoting *Sanders v. Trickey*, 875 F.2d 205, 212 (8th Cir. 1989)). After reviewing the record, this Court agrees that trial counsel's decision was plainly a strategic one, which should be accorded a strong level of deference. Furthermore, Petitioner fails to offer any affidavit or objective proof that Christina would have testified favorably had trial counsel called her as a witness. *See Lewis v. Mazurkiewicz*, 915 F.2d 106, 115 (3d Cir. 1990) (finding the prejudice prong of *Strickland* not met where petitioner did not establish that testimony of potential witness, whom counsel failed to interview, would have supported his claim of self-defense). Accordingly, the state courts' rulings on this point were not contrary to, or an unreasonable application of, Supreme Court precedent. Therefore, Petitioner's claim on this ground fails.

Petitioner next argues that his trial counsel was ineffective because he failure to call

Carlos Gonzalez, an alleged alibi witness, to the stand.  According to the Superior Court, Mr. Gonzalez would have corroborated Christina Ortiz's statement that Petitioner promised her a puppy if she did not go into the bedroom.  (PCR Hearing at 18.)  Also, Mr. Gonzalez's testimony would have indicated that, even though Petitioner was at Mr. Gonzalez's house from 3:30 p.m. to 4:00 p.m. on the day in question, he still had time to commit the murder (i.e., from 3:00 p.m. to 4:00 p.m.).  Therefore, the Superior Court held that trial counsel's failure to call Mr. Gonzalez to the stand was a strategic decision and did not constitute ineffective assistance of counsel.  On appeal, the Appellate Division affirmed.

This claim fails for three reasons.  First, without any affidavit establishing Mr. Gonzalez's availability to testify at trial and his willingness to cooperate, Petitioner has not established the proper factual predicate for his ineffective assistance claim.  Second, the Superior Court's ruling on this issue did not involve an unreasonable determination of the facts in light of the evidence presented.  A review of the record confirms that trial counsel's failure to call Mr. Gonzalez as a defense witness was a strategic decision for the reasons stated by the Superior Court.  Finally, the state courts' decisions on this issue were not contrary to, or an unreasonable application of, Supreme Court precedent.  Therefore, Petitioner is not entitled to relief on this ground.

Next, Petitioner argues that his trial counsel was ineffective because he failed to object to the admission of evidence that Petitioner was on parole and had a restraining order against him on the day of the murder.  Petitioner raised this argument at the PCR Hearing.  There, the Superior Court determined that Petitioner's counsel wanted this evidence admitted to explain why Petitioner fled the scene of the crime and later lied to police officers.  (PCR Hearing at 19-

9

20.)  In fact, the Superior Court noted that Petitioner's counsel actually stated this trial strategy on the record.  (*Id.*; *see also* Trial Tr. 5T 28:10-29:20.)  On appeal, the Appellate Division affirmed.

After reviewing the record, this Court agrees with the state courts.  Trial counsel clearly wanted this evidence admitted as part of his strategy to explain Petitioner's flight from the scene.  The state courts' rulings on this point was not contrary to, or an unreasonable application of, Supreme Court precedent.  Petitioner is not entitled to relief on this ground.

Finally, Petitioner argues that his trial counsel was ineffective because he failed to request a limiting instruction on the other crimes evidence.  Again, the Superior Court found that this was a strategic decision and denied Petitioner relief.  (PCR Hearing at 20.)  This holding was not contrary to, or an unreasonable application of, Supreme Court precedent.  Furthermore, the Court notes that this holding was not an unreasonable determination of the facts in light of the evidence presented.  *See, e.g., Buehl v. Vaughn*, 166 F.3d 163, 170 (3d Cir. 1990) (noting that, when other crimes evidence is introduced, "counsel may reasonably conclude that it is strategically preferable to omit [a request for a limiting instruction] since the instruction might have the undesired effect of highlighting the other crimes evidence.").  Accordingly, Petitioner is not entitled to relief on this claim.

### III.  Ineffective Assistance of Appellate Counsel

Petitioner next argues that he received ineffective assistance of counsel on direct appeal because: (1) counsel failed to raise the trial court's admission of the other crimes evidence and the trial court's failure to provide a limiting instruction; and (2) counsel neglected to argue ineffective assistance of trial counsel regarding the admission of the other crimes evidence.  At

the PCR Hearing, the Superior Court determined that Petitioner failed to establish ineffective assistance of counsel on either ground. (PCR Hearing at 22-23.) The Superior Court concluded that, because trial counsel wanted this evidence admitted as part of his trial strategy, Petitioner's appellate counsel was not ineffective in failing to raise the admission of this evidence on appeal. (*Id.*) On appeal, the Appellate Division affirmed.

The Supreme Court held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. *Evitts v. Lucey*, 469 U.S. 387 (1985). Claims of ineffective assistance of appellate counsel are evaluated under the *Strickland* standard. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, *see Jones v. Barnes*, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Moreover, to prevail on a claim of ineffective appellate counsel, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability that, but for counsel's deficiency in raising the arguments on appeal, the conviction would have been reversed on appeal. *Buehl*, 166 F.3d at 173-74.

The record overwhelmingly indicates that trial counsel wanted the other crimes evidence admitted as part of his trial strategy. Because of this, the Court cannot find that Petitioner's appellate counsel performed unreasonably, nor can the Court find that, but for appellate counsel's failure to raise this argument, the conviction would have been reversed on appeal. Therefore, the

11

state courts' decisions on this point were not contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, Petitioner is not entitled to relief on this claim.[2]

### III. Trial Court's Admission of Other Crimes Evidence and Failure to Provide a Limiting Instruction *Sua Sponte*

Petitioner also argues that the trial court's admission of the other crimes evidence, and its failure to provide a limiting instruction *sua sponte*, deprived Petitioner of his right to a fair trial. Petitioner raised this issue at his PCR Hearing. At the hearing, the Superior Court held that this argument was identical to his ineffective assistance of counsel claims. (PCR Hearing at 22.) Again, the Superior Court held that, because the trial counsel wanted this crimes evidence admitted to provide a reason for Petitioner's flight from the crime scene, this was trial strategy and not grounds for reversal. (*Id*.) On appeal, the Appellate Division affirmed.

This claim involves issues of state evidentiary and procedural law not normally cognizable on habeas review. *See Johnson v. Rosemeyer*, 117 F.3d 104, 109 (3d Cir. 1997). Only where an evidentiary ruling is "so prejudicial as to amount to a violation of due process and

---

[2]Petitioner also argues, in his ineffective assistance of counsel claim, that he is entitled to a new PCR hearing pursuant to *State v. Rue*, 175 N.J. 1 (2002). In *Rue*, the New Jersey Supreme Court interpreted N.J. Ct. R. 3:22-6, which requires the assignment of counsel on an indigent defendant's first state PCR application, to require that the assigned counsel present all grounds for relief as requested by the petitioner-defendant, regardless of their lack of merit. According to Petitioner, his appellate counsel failed to make any argument during the PCR Hearing regarding the trial counsel's failure to object to the other crimes evidence or the lack of a limiting instruction, even though Petitioner requested appellate counsel to do so (Petitioner apparently made these arguments on his own at the PCR Hearing). The holding of *Rue*, though, is inapplicable to this habeas petition. It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief unless it arises to the level of deprivation of due process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 70 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Petitioner has not established such a deprivation here. Therefore, Petitioner is not entitled to relief on this claim.

12

fundamental fairness will a habeas corpus claim lie." *Grecco v. O'Lone*, 661 F. Supp. 408, 412 (D.N.J. 1987); *Vandever*, 2006 U.S. Dist. LEXIS 35939, at *26. "Admission of 'other crimes' evidence provides a ground for federal habeas relief only if 'the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial.'" *Bronshtein v. Horn*, 404 F.3d 700, 730 (3d Cir. 2005) (quoting *Lesko v. Owens*, 881 F.2d 44, 52 (3d Cir. 1989)).

In this case, the Court finds that the state courts' evidentiary rulings with respect to the other crimes evidence, and the trial court's failure to provide a limiting instruction, did not violate Villaran's due process rights. Again, Petitioner's trial counsel specifically requested the admission of this evidence, and did not ask for a limiting instruction, to provide a reason why Petitioner fled the scene upon arrival of the police. In fact, Petitioner's counsel explicitly relayed this reason when asked by the trial court whether he objected to the introduction of such evidence. Therefore, the trial court's admission of this evidence cannot be considered as "so prejudicial as to amount to a violation of due process." The state courts' decision on this ground was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on this claim.

**IV.     Admission of Christina Ortiz's Statement as an Excited Utterance**

Next, Petitioner raises two arguments regarding the admission of Christina Ortiz's statements implicating him in the death of Ms. Zialcita. First, Petitioner argues that the court wrongly admitted Christina Ortiz's statements as an excited utterance under New Jersey Rule of Evidence 803(c)(2). Second, he argues that admitting Christina Ortiz's statements violated the Sixth Amendment's Confrontation Clause. The Court will address these issues in turn.

13

### A.     Excited Utterance

Petitioner argues that habeas relief is warranted because Christina Ortiz's statements were not an excited utterance under New Jersey Evidence Rule 803(c)(2).  Whether her statements were an excited utterance, though, is a state evidentiary question that federal courts do not generally review in habeas petitions.  *Estelle*, 502 U.S. at 67-68; *Lisenba v. California*, 314 U.S. 219, 228-29 (1941).  Therefore, since Petitioner's argument regarding the admissibility of Christina Ortiz's statements is solely a question of state law, it is not grounds for federal habeas relief.

For an evidentiary mistake to meet the requirements for granting habeas relief, Petitioner must show that the admission of the particular evidence "caused 'fundamental unfairness' in violation of due process."  *Kontakis v. Beyer*, 19 F.3d 110, 120 (3d Cir. 1994) (quoting *Lisenba*, 314 U.S. at 236).  To determine if the evidence caused fundamental unfairness, the Court must apply the harmless error test.  *Id.*  Under this test, an error is harmless if it did not have "a substantial and injurious effect or influence in determining the jury's verdict."  *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 n.9 (1993)).  Shocking evidence does not meet this standard because, if the evidence is probative, the admission of such evidence is not so egregious that it violates due process.  *See Lisbena*, 314 U.S. 228-29.

At the outset, the Court notes that Petitioner did not raise any due process argument in his petition regarding the admission of Christina Ortiz's statement.  Furthermore, Petitioner did not present this argument before any state court.  As such, the Court may not reach this issue.  *See Winthrow v. Williams*, 507 U.S. 680, 695-96 (1993); *Keller v. Larkins*, 251 F.3d 408, 414-15 (3d Cir. 2001).  Nevertheless, Petitioner has not established a due process claim.  The jury in this

case viewed the videotaped competency hearing of Christina Ortiz, allowing them to weigh the validity and credibility of her out-of-court testimony. Furthermore, the jury was privy to cross-examination of Investigator Molina, thereby allowing the jury to weigh her recollection of Christina Ortiz's statements. Finally, the Court ruled that Christina Ortiz's testimony was not influenced in any way by Investigator Molina's questioning. All of this supports a finding that no due process violation occurred. Therefore, Petitioner is not entitled to relief on this claim.

### B. Sixth Amendment

Next, Petitioner argues that admission of Christina Ortiz's statement under N.J. Rule Evid. 803(c)(2) violated the Confrontation Clause of the Sixth Amendment. "[A] criminal defendant's right to confront a witness against him is not violated by the introduction of hearsay testimony where either 'the hearsay statement 'falls within a firmly rooted hearsay exception,' or where it is supported by 'a showing of particularized guarantees of trustworthiness.''" *United States v. Daniels*, 48 Fed. Appx. 409, 414 (3d Cir. 2002) (citing *Idaho v. Wright*, 497 U.S. 805, 816-17 (1990)).[3] "The excited utterance exception falls into the 'firmly rooted' category." *Id.* (citing *Kontakis*, 19 F.3d at 119); *White v. Illinois*, 502 U.S. 346, 356 n.8 (1992). Therefore, deferring to the state courts' determination that the testimony in question was, as a matter of state

---

[3]In 2004, the Supreme Court changed its jurisprudence on this issue. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that testimonial statements are admissible at trial only if the declarant is unavailable and the defendant had a prior opportunity to cross-examine. Although our Circuit has not determined whether *Crawford* applies retroactively to cases on collateral review, the majority counsels that it does not. *See Mungo v. Duncan*, 393 F.3d 327, 335-36 (2d Cir. 2004); *Brown v. Uphoff*, 381 F.3d 1219, 1225-1227 (10th Cir. 2004); *Murillo v. Frank*, 402 F.3d 786, 790-91 (7th Cir. 2005); *but see Bockting v. Bayer*, 399 F.3d 1010 (9th Cir. 2005). This Court agrees with the majority of those courts finding that *Crawford* is not applied retroactively. Accordingly, the new legal rule in *Crawford* is not applicable to this case.

law, admissible as an excited utterance, Petitioner's Sixth Amendment claim must fail.[4]

## V. Passion/Provocation Jury Charge

Petitioner also argues that the trial court erred in not granting his request for a passion/provocation jury instruction. Under New Jersey law, criminal homicide constitutes manslaughter when a homicide, which would otherwise be murder, is committed in the heat of passion resulting from a reasonable provocation. N.J.S.A. 2C:11-4(b)(2). Petitioner argues that the jury could have found that he committed manslaughter after being provoked by Ms. Zialcita.

In *Beck v. Alabama*, 447 U.S. 625, 635 (1980), the Supreme Court held that, in a capital case, a trial court must give a requested charge on a lesser included offense where it is supported by the evidence. The Court left open the question, however, whether instructions on lesser included offenses were required in non-capital cases. *Id.* The Third Circuit, though, held that such a requirement applies in non-capital cases. *Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3d Cir. 1988).

Petitioner presented this claim on direct appeal. The Appellate Division disposed of it as

---

[4]Petitioner also argues that Christina Ortiz's statement was unreliable because the state court failed to adhere to *State v. Michaels*, 136 N.J. 299 (1994). In that case, which involved numerous statements by children, the New Jersey Supreme Court held that the likelihood of unreliable evidence from improper and suggestive interview techniques required a pre-trial taint hearing concerning the admission of the children's statements and testimony. This argument, though, must be denied for at least three reasons. First, as discussed above, this argument is moot because the trial court held such a hearing. Second, absent constitutional error, a federal habeas motion is not the proper vehicle for alleging a violation of state law by a trial court. Here, there was no constitutional error. Third, the Supreme Court has already held that the Confrontation Clause of the Constitution does not impose a "fixed set of procedural prerequisites to the admission of [a child's statement] at trial." *Wright*, 497 U.S. at 818. To the extent that Petitioner is asking the Court to apply a heightened reliability analysis, the Third Circuit held pre-*Crawford* that "[s]uch an analysis is not necessary where the court determined, as here, that the statement fits the requirements of a firmly rooted exception." *United States v. Coleman*, 68 Fed. Appx. 300, 304 (3d Cir. 2003). Therefore, Petitioner is not entitled to relief on this claim.

follows:

> There was no basis in the evidence for the trial court to charge the jury on passion/provocation manslaughter because the jury could not have rationally concluded that the asserted provocation was sufficient to inflame the passion of [a] reasonable person and a reasonable person would not have resorted to deadly force in the situation presented in this case. ... The evidence presented at trial indicated defendant was upset either because the victim was smoking or because the welfare check did not arrive. The medical examination revealed the victim had a bruise on her cheek which indicated she was punched in the face and was lying down when she was stabbed twelve times. She had no defensive wounds which would be present if she had fought with her attacker and defendant bore no marks indicating a physical struggle. Although a neighboring tenant heard an argument the afternoon the victim was murdered, it sounded as though defendant was the aggressor. These facts are insufficient to warrant a passion/provocation murder charge.

*Villaran*, No. A-6376-97T3, slip op. at 1-8.

Petitioner cites no Supreme Court precedent supporting his claim. This Court finds that the Appellate Division's adjudication of the claim was not contrary to or an unreasonable application of Supreme Court precedent. Accordingly, Petitioner is not entitled to relief on this claim.

## VI.     Petitioner's Sentence

Next, Petitioner argues that the trial court's imposition of an extended sentence, based upon his status as a persistent offender, was unwarranted. Petitioner claims the court failed to consider certain mitigating factors in imposing its sentence. According to Petitioner, the appropriate sentence is thirty years imprisonment without parole. The Appellate Division reviewed this claim and found it entirely unwarranted.

Petitioner is not entitled to habeas relief on this ground because his statutory eligibility

17

for an extended term is a question of state law. Furthermore, the imposition of the extended term as a persistent offender was not contrary to, or an unreasonable application of, clearly established Eighth Amendment jurisprudence as determined by the Supreme Court. *See Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case. In applying this principle for § 2254(d)(1) purposes, it was not an unreasonable application of our clearly established law for the California Court of Appeal to affirm Andrade's sentence of two consecutive terms of 25 years to life in prison"). Accordingly, Petitioner is not entitled to relief on this claim.

### VII. Cumulative Errors of Trial Counsel

Finally, Petitioner argues that his conviction was the result of cumulative errors of trial counsel. Individual errors which do not alone create constitutional error can, when combined, have a cumulative effect rising to the level of constitutional error. *See Kyles v. Whitley*, 514 U.S. 419 (1995). As discussed earlier, the record shows that Petitioner's trial counsel was not ineffective under *Strickland*. Each of trial counsel's decisions were either based upon courtroom strategy, or were entirely non-prejudicial to Petitioner. Therefore, this Court cannot conclude that trial counsel's alleged errors, even when accumulated, rise to the level of constitutional magnitude. Petitioner is not entitled to relief on this claim.

### VIII. Certificate of Appealability

In the Third Circuit, a certificate of appealability is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition alleges a deprivation of constitutional rights." *Morris v. Horn*, 187 F.3d 333, 340 (3d Cir. 1999); *see also* 28 U.S.C. § 2253(c). This

18

Court concludes that Petitioner has not made such a showing.  Therefore, the Court will not issue a certificate of appealability.

## **CONCLUSION**

For the foregoing reasons, the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

Dated:   September 6, 2006                               s/ William J. Martini
                                                         **William J. Martini, U.S.D.J.**